# EXHIBIT

## "B"

 **Capitol Specialty Insurance Corporation**
A Stock Company

PO Box 5900
Madison, WI 53705-0900

## WHAT TO DO IF YOU HAVE A CLAIM OR POTENTIAL CLAIM OR INCIDENT

Send all notices of claims or potential claim notices, as well as other required material to:

| | |
|---|---|
| **Email (Preferred):** | claims@capspecialty.com |
| **Or Mailing Address:** | Capitol Specialty Insurance Corporation<br>Claims Department<br>P. O. Box 5900<br>Madison, WI  53705 |
| **Or Overnight/Express:** | Capitol Specialty Insurance Corporation<br>Claims Department<br>1600 Aspen Commons<br>Suite 300<br>Middleton, WI  53562 |
| **Or Facsimile:** | (608) 829-7411 |
| **Or Toll Free:** | 800-475-4450 (Select #3 for Claims) |

Please reference your policy for complete details relating to reporting requirements in connection with claims or potential claims, including what to include in your notices.

© 2016 CapSpecialty, Inc. All rights reserved.

## Capitol Specialty Insurance Corporation

A Stock Company
PO Box 5900
Madison, WI 53705-0900

# Declarations

## Healthcare Organizations Professional Liability Insurance Policy

**THIS POLICY MAY CONTAIN CLAIMS MADE COVERAGE PARTS, WHICH MAY BE SUBJECT TO SEPARATE LIMITS OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

| Policy No.: | **MM20172316-02** | Renewal of Policy No: | MM20172316-01 |
|---|---|---|---|

| Item 1. | Named Insured and Mailing Address: | Superior Medical Response Inc.<br>20 Jobstown Juliustown Road<br>Jobstown, NJ 08041 |
|---|---|---|

| Issuing Company: | Capitol Specialty Insurance Corporation |
|---|---|

| Item 2. | Policy Period: | **Effective Date**<br>05/20/2018 | **Expiration Date**<br>05/20/2019 |
|---|---|---|---|

12:01 a.m. standard time at the mailing address of the **Named Insured** first listed in Item 1. above.

### Item 3. Limit of Liability and Deductible:

| Professional Liability | Each Medical Incident | $1,000,000 |
|---|---|---|
| Occurrence | Insuring Agreement Aggregate | $3,000,000 |
| | Each Medical Incident Deductible | $2,500 |
| | Aggregate Deductible | N/A |
| General Liability | Aggregate Limit | $3,000,000 |
| Occurrence | Occurrence Limit | $1,000,000 |
| | Products/Completed Operations Limit | $1,000,000 |
| | Personal/Advertising Injury Limit | $1,000,000 |
| | Damage to Premises Rented to You (Each Fire) | $100,000 |
| | Medical Payments | $5,000 |
| | Each Occurrence Deductible | $2,500 |
| | Aggregate Deductible | N/A |
| Sexual Misconduct Liability | Per Claim Limit | $1,000,000 |
| Occurrence | Annual Aggregate | $1,000,000 |
| | Deductible | $2,500 |
| | Deductible Aggregate | N/A |
| **Insurer's Aggregate Limit of Liability for all Claims under all Insuring Agreements** | | N/A |

| Item 6. | Claim Notices are required to be given to us & must be addressed to: | Professional Risk Management Services, Inc.<br>1401 Wilson Boulevard, Suite 700<br>Arlington, VA 22209-2402 | Phone:<br>Fax:<br>Email: | (866) 599-6098<br>(608) 829-7411<br>PCClaims@CapSpecialty.com |
|---|---|---|---|---|

### Item 7. Premium and Applicable Taxes / Fees:

Annual Premium:
Terrorism:
State Surcharge / Tax:
Surplus Lines Tax:
   Total:

Premium stated above does not include applicable surplus lines taxes or other taxes/ fees.  Producing Agent is responsible for determination of such amounts, invoicing insured, collecting, and filing in accordance with NJ surplus lines laws and/or insurance regulations.

CMM 021 (07-15)

Page 1 of 2

© 2015 CapSpecialty, Inc. All rights reserved.

## Capitol Specialty Insurance Corporation

A Stock Company
PO Box 5900
Madison, WI 53705-0900

# Declarations

| Item 8. | Forms & Endorsements: | |
|---|---|---|
| | WHAT TO DO IF YOU HAVE A CLAIM OR POTENTIAL CLAIM OR INCIDENT | N-200 (09/16) |
| | Healthcare Organizations Professional Liability Insurance Declarations | CMM 021 (07-15) |
| | Healthcare Organizations Occurrence Professional Liability Insuring Agreement | CMM 008 (01-14) |
| | Healthcare Organizations Occurrence General Liability Insuring Agreement | CMM 004 (01-14) |
| | Healthcare Organizations Occurrence Sexual Misconduct Liability Insuring Agreement | CMM 006 (01-14) |
| | Healthcare Organizations Common Policy Conditions | CMM 001 (06-15) |
| 1 | Service of Suit | E-9000 (02/17) |
| | Exclusion of Certified Acts of Terrorism | CMM 047 (02-15) |
| 2 | Media Expenses Supplementary Payments Coverage | CMM 024 (12-15) |
| 3 | HIPAA Violation Supplementary Payments Endorsement | CMM 025 (12-15) |
| 4 | Amend Definition of Claim - Clarify Reporting of Incidents | CMM 130 (06-16) |
| 5 | Cancellation By Insurer | CMM 133 (08-16) |

© 2015 CapSpecialty, Inc. All rights reserved.

## HEALTHCARE ORGANIZATIONS OCCURRENCE PROFESSIONAL LIABILITY INSURING AGREEMENT

THIS INSURING AGREEMENT PROVIDES OCCURRENCE COVERAGE.  THE PAYMENT OF **DEFENSE EXPENSES** WILL NOT REDUCE OR EXHAUST THE LIMIT OF LIABILITY UNDER THIS INSURING AGREEMENT.  THE COVERAGE PROVIDED BY THIS INSURING AGREEMENT IS SUBJECT TO THE HEALTHCARE ORGANIZATIONS COMMON POLICY CONDITIONS.  PLEASE READ THE ENTIRE POLICY CAREFULLY.

In consideration of the payment of the premium and upon all statements made and information furnished to **Us**, including the statements made in the **Application**, **We** and the **Insured**, subject to all of the terms, conditions and limitations of this Policy and any endorsements thereto, agree as follows:

### I.    INSURING AGREEMENT

#### OCCURRENCE PROFESSIONAL LIABILITY INSURANCE

**We** will pay on behalf of the **Insured**, **Loss** that the **Insured** is legally obligated to pay as a result of any covered **Claim** for a **Healthcare Professional Services Wrongful Act** that is caused by an **Occurrence** that takes place during the **Policy Period**, subject to the applicable Limit of Liability.  The amount we will pay for **Loss** is limited as described in Section III. Limits of Liability and Deductible.

### II.    EXCLUSIONS SPECIFIC TO THIS COVERAGE PART

The exclusions in this section are specific to this coverage part and are in addition to the exclusions in Section IV of the Healthcare Organizations Common Policy Conditions.

**We** will not pay **Loss** or **Defense Expenses** for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

a. **Advertising Injury** or **Personal Injury**, except to the extent that such injury relates to the rendering of, or failure to render, **Medical Services**;

b. **Employee Benefits Wrongful Acts**;

c. **Property Damage**;

d. Rendering of, or failure to render, **Medical Services** by any **Insured** while the **Insured's** license to practice is or was not active.  For purposes of this exclusion II.(d), the licensed status of an **Insured** shall not be imputed to any other **Insured**; and

e. **Sexual Misconduct**

### III.    LIMITS OF LIABILITY AND DEDUCTIBLE

#### A.    LIMIT OF LIABILITY

1. The Per Occurrence Limit of Liability listed in the Declarations is **Our** maximum Limit of Liability for all **Loss** applicable to this Professional Liability Insuring Agreement.   In addition, the Professional Liability Insuring Agreement is subject to a separate aggregate limit of liability, also listed in the Declarations, which is the maximum Limit of Liability for this Insuring Agreement.

Copyright 2014, CapSpecialty, Inc.

2.  Each Limit of Liability described in the Declarations shall apply regardless of the time of payment by **Us**, the number of persons or entities included within the definition of **Insured** or the number of claimants..

3.  All **Insureds** under this Policy share the Limits of Liability.  In no event will the number of **Insureds** involved in a **Claim** or **Related Claims** increase the Limits of Liability.  In no event will more than one Limit of Liability apply to any **Claim** or **Related Claims**, even if the **Claim** or **Related Claims** implicate more than one Insuring Agreement.  In all events, if this Professional Liability Insuring Agreement and another Sexual Misconduct Insuring Agreement are both implicated, **We** have the right to solely apply the Limit of Liability under the Sexual Misconduct Insuring Agreement.

4.  If any **Claim** made against the **Insureds** gives rise to coverage both under this Policy and under any other policy or policies issued by **Us** or any affiliate of **Us**, **Our** and, if applicable, such affiliate's maximum aggregate limit of liability under all such policies for all **Loss** in respect of such **Claim** will not exceed the largest single available limit of liability under such policy, including this Policy.  In no event will more than one policy issued by **Us** respond to a **Claim**.

5.  The Policy Aggregate Limit of Liability listed in the Declarations is **Our** maximum Limit of Liability for all **Loss** from all **Claims**, **Occurrences** or **Related Claims** under all Insuring Agreements of this Policy.

**B.  DEDUCTIBLE**

1.  The **Insured** shall be responsible for payment in full of the applicable deductible stated in the Declarations under the Professional Liability Deductible.  For purposes of this Insuring Agreement, **Our** obligation to pay **Loss** under this Insuring Agreement shall be excess of such deductible.  The applicable deductible shall apply to each **Claim** or **Related Claims**.  **We** shall have no obligation whatsoever, either to the **Insured** or any other person or entity, to pay all or any portion of the applicable deductible on behalf of the **Insured**.  **We** shall, however, at **Our** sole discretion, have the right and option to do so, in which event the **Insured** will repay **Us** any amounts so paid.

Copyright 2014, CapSpecialty, Inc.

## HEALTHCARE ORGANIZATIONS OCCURRENCE GENERAL LIABILITY INSURING AGREEMENT

THIS INSURING AGREEMENT PROVIDES OCCURRENCE COVERAGE.  THE PAYMENT OF **DEFENSE EXPENSES** WILL NOT REDUCE OR EXHAUST THE LIMIT OF LIABILITY UNDER THIS INSURING AGREEMENT.   THE COVERAGE PROVIDED BY THIS INSURING AGREEMENT IS SUBJECT TO THE HEALTHCARE ORGANIZATIONS COMMON POLICY CONDITIONS.  PLEASE READ THE ENTIRE POLICY CAREFULLY.

In consideration of the payment of the premium and upon all statements made and information furnished to **Us**, including the statements made in the **Application**, **We** and the **Insured**, subject to all of the terms, conditions and limitations of this Policy and any endorsements thereto, agree as follows:

## I.   INSURING AGREEMENT

### OCCURRENCE GENERAL LIABILITY INSURANCE

**We** will pay on behalf of the **Insured**, **Loss** that the **Insured** is legally obligated to pay as a result of any covered **Claim** for **Bodily Injury, Property Damage, Advertising Injury, Personal Injury** or **Damage to Premises Rented to You** that is caused by an **Occurrence** that takes place during the **Policy Period**, subject to the applicable Limit of Liability.  The amount we will pay for **Loss** is limited as described in Section IV. Limits of Liability and Deductible.

## II.   MEDICAL PAYMENTS COVERAGE

**We** will pay on behalf of the **Insured**, subject to the Limit of Liability set forth in the Declarations section under General Liability, **Medical Payments** arising from any **Bodily Injury** suffered by a person invited onto the business premises of the **Insured**, where such **Bodily Injury** was caused by an **Occurrence** that took place on the **Insured**'s business premises and in the conduct of the **Insured**'s profession as identified in the **Application**; provided always that:

- a. such **Occurrence** took place during the **Policy Period**;

- b. the treatment or other services eligible for **Medical Payments** are rendered within one (1) year of the **Occurrence**, and the **Medical Payments** expenses are reported to **Us** within ninety (90) days from the date such treatment or service was rendered; and

- c. the injured person submits to examination, as often as required by **Us**, by physicians of **Our** choice and at **Our** expense.

The Limit of Liability set forth under Medical Payments in the General Liability Insuring Agreement of the Declarations shall be part of, and not in addition to, the General Liability aggregate Limit of Liability, as set forth of the Declarations and described below in Section IV Limits of Liability and Deductible.

## III.   WHEN COVERAGE DOES NOT APPLY TO THIS INSURING AGREEMENT

The exclusions in this section are specific to this coverage part and are in addition to the exclusions in Section IV of the Healthcare Organizations Common Policy Conditions.

**We** will not pay **Loss** or **Defense Expenses** for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

Copyright 2014, CapSpecialty, Inc.

1. Damage to Owned/Rented/Occupied Property

   **Property Damage** to:

   a. property the **Insured** owns, rents or occupies, including any costs or expenses incurred by the **Insured**, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

   b. premises sold, given away or abandoned by the **Named Insured**, if the **Property Damage** arises out of any part of those premises;

   c. property loaned to the **Insured**;

   d. personal property in the care, custody or control of the **Insured**;

   e. that particular part of real property on which the **Insured**, or any contractor or subcontractor working directly or indirectly on the **Insured**'s behalf, is performing operations, if the **Property Damage** arises out of those operations;

   f. property which is being transported by the **Insured** by **Auto** or **Mobile Equipment**, including the loading and unloading thereof; and

   g. a delay or failure by an **Insured** or anyone acting on the **Named Insured**'s behalf to perform a contract or an agreement in accordance with its terms

   Except that:

   h. Exclusion 1(a) above does not apply to **Damages to Premises Rented to You**, subject to the applicable Limit of Liability set forth in Item 3. (b) in the Declarations.

2. Employee Benefits

   **Employee Benefits Wrongful Act.**

3. Healthcare Professional Services

   **Healthcare Professional Services Wrongful Act.**

4. Liquor Liability (With Carveback for Host Liquor)

   **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

   a. causing or contributing to the intoxication of any person;

   b. the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

   c. any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

   This exclusion does not apply with respect to liability of an **Insured** arising out of the giving or serving of alcoholic beverages at functions incidental to the **Named Insured's** business, provided the **Named Insured** is not engaged in the business of manufacturing, distributing, selling or serving of alcoholic beverages.

5. Misleading Pricing

Copyright 2014, CapSpecialty, Inc.

**Advertising Injury** arising out of any false, incorrect or misleading description of the price of goods, **Products** or services.

6. Recall of **Products**, **Work** or **Impaired Property**

   Damages claimed for any **Loss**, cost or expense incurred by an **Insured** or others for the **Loss** of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

   a. **Products**;

   b. **Work**; or

   c. **Impaired Property**

   if such **Products**, **Work**, or **Impaired Property** are withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in them.

7. Sexual Misconduct

   **Sexual Misconduct**.

## IV. LIMITS OF LIABILITY AND DEDUCTIBLE

**A. LIMIT OF LIABILITY**

1. The Per Occurrence Limit of Liability listed in the Declarations is **Our** maximum Limit of Liability for all **Loss** applicable to this General Liability Insuring Agreement.  In addition, the General Liability Insuring Agreement is subject to a separate aggregate limit of liability, also listed in the Declarations, which is the maximum Limit of Liability for this Insuring Agreement.

2. Each Limit of Liability described in the Declarations shall apply regardless of the time of payment by **Us**, the number of persons or entities included within the definition of **Insured** or the number of claimants.

3. All **Insureds** under this Policy share the Limits of Liability.  In no event will the number of **Insureds** involved in a **Claim** or **Related Claims** increase the Limits of Liability.  In no event will more than one Limit of Liability apply to any **Claim** or **Related Claims**, even if the **Claim** or **Related Claims** implicate more than one Insuring Agreement.  In all events, if this General Liability Insuring Agreement and another Sexual Misconduct Insuring Agreement are both implicated, **We** have the right to solely apply the Limit of Liability under the Sexual Misconduct Insuring Agreement.

4. If any **Claim** made against the **Insureds** gives rise to coverage both under this Policy and under any other policy or policies issued by **Us** or any affiliate of **Us**, **Our** and, if applicable, such affiliate's maximum aggregate limit of liability under all such policies for all **Loss** in respect of such **Claim** will not exceed the largest single available limit of liability under such policy, including this Policy.  In no event will more than one policy issued by **Us** respond to a **Claim**.

5. The Policy Aggregate Limit of Liability listed in the Declarations is **Our** maximum Limit of Liability for all **Loss** from all **Claims**, **Occurrences** or **Related Claims** under all Insuring Agreements of this Policy.

Copyright 2014, CapSpecialty, Inc.

**B. DEDUCTIBLE**

1. The **Insured** shall be responsible for payment in full of the applicable deductible stated in the Declarations under the General Liability Deductible.  For purposes of this Insuring Agreement, **Our** obligation to pay **Loss** under this Insuring Agreement shall be excess of such deductible.  The applicable deductible shall apply to each **Claim** or **Related Claims**.  **We** shall have no obligation whatsoever, either to the **Insured** or any other person or entity, to pay all or any portion of the applicable deductible on behalf of the **Insured**.  **We** shall, however, at **Our** sole discretion, have the right and option to do so, in which event the **Insured** will repay **Us** any amounts so paid.

Copyright 2014, CapSpecialty, Inc.

## HEALTHCARE ORGANIZATIONS OCCURRENCE SEXUAL MISCONDUCT INSURING AGREEMENT

THIS INSURING AGREEMENT PROVIDES OCCURRENCE COVERAGE.  THE PAYMENT OF **DEFENSE EXPENSES** WILL REDUCE OR EXHAUST THE LIMIT OF LIABILITY UNDER THIS INSURING AGREEMENT.   THE COVERAGE PROVIDED BY THIS INSURING AGREEMENT IS SUBJECT TO THE HEALTHCARE ORGANIZATION COMMON POLICY CONDITIONS.  PLEASE READ THE ENTIRE POLICY CAREFULLY.

In consideration of the payment of the premium and upon all statements made and information furnished to **Us**, including the statements made in the **Application**, **We** and the **Insured**, subject to all of the terms, conditions and limitations of this Policy and any endorsements thereto, agree as follows:

## I.    INSURING AGREEMENT

### OCCURRENCE SEXUAL MISCONDUCT INSURANCE

Subject to the applicable Limit of Liability and Deductible, as described in Section II, **We** will pay on behalf of the **Insured**, **Loss** that the **Insured** is legally obligated to pay as a result of any covered **Claim** alleging **Sexual Misconduct** by the **Insured** that is caused by an **Occurrence** that takes place during the **Policy Period**.  As part of, and not in addition to the Limits of Liability, **We** will pay **Defense Expenses** in connection with **Our** right and duty to defend any such **Claim** brought against an **Insured**, and will do so even if any allegations of the **Claim** are groundless, false or fraudulent.    Provided that in no circumstances will **We** have any obligation to pay any **Loss** or **Defense Expenses** on behalf of any **Insured** that has been found personally liable for, or adjudged guilty of, **Sexual Misconduct**.

If any **Sexual Misconduct** is alleged at any stage during a **Claim** against any **Insured** or **Insureds**, all allegations in that **Claim** which arise out of the same or related professional treatment or relationship will be subject to the Limit of Liability set forth in the Declarations for this coverage part.  If **We** have paid the Limit of Liability, **We** will no longer have any duty to pay or reimburse **Defense Expenses** for any **Claim** involving **Sexual Misconduct**.

## II.    LIMITS OF LIABILITY AND DEDUCTIBLE

### A.  LIMIT OF LIABILITY

1.  The Per Occurrence Limit of Liability listed in the Declarations is **Our** maximum Limit of Liability for all **Loss** applicable to this Sexual Misconduct Insuring Agreement.   In addition, the Sexual Misconduct Insuring Agreement is subject to a separate aggregate limit of liability, which is the maximum Limit of Liability for this Insuring Agreement.

2.  Each Limit of Liability described in the Declarations shall apply regardless of the time of payment by **Us**, the number of persons or entities included within the definition of **Insured** or the number of claimants.

3.  All **Insureds** under this Policy share the Limits of Liability.  In no event will the number of **Insureds** involved in a **Claim** or **Related Claims** increase the Limits of Liability.  In no event will more than one Limit of Liability apply to any **Claim** or **Related Claims**, even if the **Claim** or **Related Claims** implicate more than one Insuring Agreement.  In all events, if this Sexual Misconduct Insuring Agreement and another Insuring Agreement are both implicated, **We** have the right to solely apply the Limit of Liability under the Sexual Misconduct Insuring Agreement.

Copyright 2014, CapSpecialty, Inc.

4. If any **Claim** made against the **Insureds** gives rise to coverage both under this Policy and under any other policy or policies issued by **Us** or any affiliate of **Us**, **Our** and, if applicable, such affiliate's maximum aggregate limit of liability under all such policies for all **Loss** in respect of such **Claim** will not exceed the largest single available limit of liability under such policy, including this Policy.  In no event will more than one policy issued by **Us** respond to a **Claim**.

5. The Policy Aggregate Limit of Liability listed in the Declarations is **Our** maximum Limit of Liability for all **Loss** from all **Claims**, **Occurrences** or **Related Claims** under all Insuring Agreements of this Policy.

**B. DEDUCTIBLE**

1. The **Insured** shall be responsible for payment in full of the applicable deductible stated in the Declarations under the Sexual Misconduct Deductible.  For purposes of this Insuring Agreement, **Our** obligation to pay **Loss** and **Defense Expenses** under this Insuring Agreement shall be excess of such deductible.  The applicable deductible shall apply to each **Claim** or **Related Claims**.  **We** shall have no obligation whatsoever, either to the **Insured** or any other person or entity, to pay all or any portion of the applicable deductible on behalf of the **Insured**.  **We** shall, however, at **Our** sole discretion, have the right and option to do so, in which event the **Insured** will repay **Us** any amounts so paid.

Copyright 2014, CapSpecialty, Inc.

## HEALTHCARE ORGANIZATIONS COMMON POLICY CONDITIONS

**Unless otherwise specified in a particular Insuring Agreement, these Common Policy Conditions apply to each Insuring Agreement as part of this Policy. This Policy may provide Occurrence or Claims Made Coverage as specified in the particular Insuring Agreement. Unless specifically stated otherwise in a particular Insuring Agreement, the payment of Defense Expenses will not reduce or exhaust the applicable Limit of Liability. Please read the entire Policy carefully.**

**In consideration of the payment of the premium and upon all statements made and information furnished to Us, including the statements made in the Application, We and the Insured, subject to all of the terms, conditions and limitations of this Policy and any endorsements thereto, agree as follows:**

### I. DEFENSE AND SUPPLEMENTARY PAYMENTS

**We** have the right and duty to defend any **Claim** that is covered by the Insuring Agreements of this Policy, even if any of the allegations of such **Claim** are groundless, false or fraudulent. In addition to the applicable Limit of Liability, **We** will pay **Defense Expenses** and will:

    a.   pay premiums for appeal, attachment, release or similar bonds;

    b.   pay all costs taxed against an **Insured** in any **Claim**;

    c.   pay reasonable expenses, plus loss of earnings due to time off from work, incurred by an **Insured** as a result of being a defendant or co-defendant in a **Claim** or at **Our** request, but not to exceed $500 per day per **Insured** and no more than $5,000 per **Claim** in total; and

    d.   pay up to $1,000 for **Loss** that is due to **Property Damage** to a **Patient's** tangible property if resulting directly from the performance or failure to perform **Medical Services**. **We** will make these payments regardless of fault. These payments will not exceed $5,000 for all such **Loss** resulting from all **Medical Services**, regardless of the number of **Patients** whose tangible property is damaged. Payments pursuant to Section I.d. will not reduce the limits of insurance of this Policy.

### II. WHO IS AN INSURED AND WHO IS A PROTECTED PERSON

**Insured** means any of the following:

    a.   the **Named Insured**;

    b.   if the **Named Insured** is a partnership or joint venture, the **Named Insured**'s partners or co-venturers are also **Insureds**, but only with respect to that partner's or co-venturer's liability as such;

    c.   if the **Named Insured** is a limited liability company, the **Named Insured**'s members are also **Insureds**, but only with respect to the conduct of the **Named Insured**'s business. The **Named Insured**'s managers are also **Insureds**, but only with respect to their duties as managers for the **Named Insured**;

    d.   if the **Named Insured** is a corporation or other organization, the **Named Insured**'s "executive officers," directors, trustees and governors are **Insureds**, but only with respect to their duties as "executive officers," directors, trustees or governors for the **Named Insured**. The **Named Insured**'s stockholders are also **Insureds**, but only with respect to their liability as stockholders;

CMM 001 (06-15)

© 2015 CapSpecialty, Inc. All rights reserved.

e. any employee, student, administrator, medical director, or **Volunteer**; but only when such employee, student, administrator, medical director, or **Volunteer** is acting within the capacity and scope of his or her duties as such for the **Named Insured**.  For purposes of this definition, "employee" includes leased workers, but not temporary workers;

f. any management company of the **Named Insured**, but only with respect to their duties as the management company of the **Named Insured** and only if a management agreement between the management company and the **Named Insured** is executed prior to the **Claim** being made;

g. any member of a duly authorized board or committee of the **Named Insured**, but only when such person is acting within the capacity and scope of his or her duties as such for the **Named Insured**;

h. if an **Insured** dies or is adjudged incompetent, this insurance will terminate for that **Insured**.  But the **Insured's** legal representative will be an **Insured** for any **Incident** or **Occurrence** committed before the **Insured's** death or adjudged incompetence, and covered by this Policy;

i. any organization the **Named Insured** newly acquires or forms, other than a partnership, joint venture or limited liability company, and over which the **Named Insured** maintains ownership or majority interest, will qualify as an **Insured** if there is no other similar insurance available to that organization.  However, coverage under this provision is afforded only until the ninetieth (90th) day after the **Named Insured** acquires or forms the organization or the end of the **Policy Period**, whichever is earlier, and provided further that coverage does not apply to **Incidents** or **Occurrences** that occurred before the **Named Insured** acquired or formed the organization. The "**Retroactive Date**" of coverage for the newly formed or acquired organization will be the date of acquisition or formation unless **We** agree, in writing, to a different **Retroactive Date**.

**Insured** does not include any physician, surgeon, resident, intern, extern, **Patient**, certified registered nurse anesthetist, nurse midwife, podiatrist or dentist.

 For purposes of the claims made professional liability or occurrence professional liability insuring agreements only, if applicable, no person or organization is an **Insured** with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a **Named Insured** in the Declarations.

<u>Blanket Additional Protected Persons</u>.  Other individuals or organizations when required to be covered by written contract, agreement, or permit, provided the written contract, agreement or permit is executed prior to the **Claim** being made. Coverage is provided for such individuals or organizations only for the work an **Insured** performs in the course of the **Insured's** operations. They will share in the applicable limit of liability for any covered **Claim**.  **Loss** paid on their behalf will reduce and may exhaust any applicable limit of liability under this Policy.  In no circumstances will this Policy provide coverage for any such individuals' or organizations' own negligence, work or conduct.

## III.    DEFINED TERMS

a. **Administration** as used in connection with **Employee Benefits Programs** shall mean the following acts if authorized by the **Named Insured**:

    a. giving counsel to employees with respect to **Employee Benefits Programs**;

    b. interpreting **Employee Benefits Programs**;

    c. handling records and processing claims in connection with **Employee Benefits Programs**; and

    d. effecting enrollment, termination or cancellation of employees under **Employee Benefits Programs**.

© 2015 CapSpecialty, Inc. All rights reserved.

b.  **Advertising Injury** means an injury arising out of one or more of the following offenses:

   a.  oral or written publication of material that slanders or libels a person or organization or disparages a person's or an organization's goods, products or services;

   b.  oral or written publication of material that violates a person's right of privacy;

   c.  misappropriation of advertising ideas or style of doing business; or

   d.  false, incorrect or misleading publication by the **Named Insured** concerning the type, scope or quality of **Medical Services** offered by the **Named Insured**.

c.  **Application** means:

   a.  the **Application** and any supplemental applications submitted to **Us**; or

   b.  any **Application** submitted to any competitor of **Ours**, which is provided to **Us** for the purposes of procuring coverage hereunder, and which shall be treated as if it were submitted directly to **Us**; and

   c.  any and all materials and information submitted to **Us** in connection with any such **Application** and all publicly available material promulgated by the **Insured** about the **Insured** that **We** obtained prior to the Inception Date of the Policy, all of which are deemed to be on file with **Us** and are deemed to be attached to, and form a part of, this Policy, as if physically attached.

d.  **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.

e.  **Bodily Injury** means physical harm, including sickness, disease or death, to the physical health of other persons.  It includes mental anguish, injury or illness, or emotional distress, that results from such physical harm, sickness or disease.

f.  **Claim** means a demand which seeks damages, any circumstance which is likely to result in a demand for damages, or a **Suit**.  **Claim** does not include a request for medical records, a Patient Incident report, a variance report, or any other report made for loss prevention purposes, a subpoena for documents, an investigation brought solely by or on behalf of any governmental agency, or a demand or action seeking solely non-monetary or injunctive relief.

g.  **Damages to Premises Rented to You** means **Property Damage** to the tangible property of a third party other than an **Insured**, caused by a fire to premises the **Named Insured** rents or leases from others or to premises temporarily occupied by any **Insured** with the permission of the owner.  Such premises shall not include any **Insured's** residence.  Water damage from such fire is also included.  The fire must not be caused intentionally; and must take place during the **Policy Period**.

   With respect to **Damages to Premises Rented to You**, **Property Damage** shall not include damage to any personal property owned by any **Insured**, or any other personal property of any person that is within any **Insured's** care, custody or control.

h.  **Defense Expenses** means any of the following incurred in the investigation, negotiation, arbitration or defense of any covered **Claim**:

   a.  reasonable and necessary **Claim** expenses incurred by **Us** on the **Insured's** behalf; and

   b.  reasonable and necessary expenses incurred by the **Insured** at **Our** request or with **Our** consent.

© 2015 CapSpecialty, Inc. All rights reserved.

i.   **Employee Benefits Program** means any group life insurance, group accident and health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers' compensation, unemployment insurance, social security and disability benefits insurance or any other similar plan under the **Administration** of the **Named Insured**.

j.   **Employee Benefits Wrongful Act** means any actual or alleged act, error or omission, or series of acts, errors or omissions, by any **Insured** in the **Administration** of an **Employee Benefits Program**.

k.   **Employment Practices** means any of the following: breach of any employment contract; failure or refusal to hire or employ; dismissal, discharge, reduction in force, downsizing or termination of employment, whether actual or constructive; demotion, reassignment, failure or refusal to promote, or deprivation of career opportunity; discipline of employees; evaluation of employees; discrimination or harassment of any kind or on any basis including, but not limited to, discrimination, limitation, segregation or classification based on race, sex, marital status, ancestry, physical or mental handicaps, age, sexual preference, pregnancy or religion or other status that is protected under any applicable federal, state or local statute or ordinance affecting any present or former employee or applicant for employment; humiliation or defamation of any present or former employee or applicant for employment; retaliatory treatment against an employee arising out of the employee's attempted or actual exercise of the employee's rights under the law; employment-related misrepresentations; or failure to implement appropriate workplace or employment policies or procedures.

l.   **Extended Reporting Endorsement** means an endorsement to this Policy that may be issued in accordance with Section V (5), below, that has the effect of extending the coverage provided by this Policy to include coverage for **Claims** first made after the expiration of the **Policy Period** (so long as the **Healthcare Professional Services Wrongful Act** took place during the **Policy Period**), as more fully explained in, and subject to the limitations of, the **Extended Reporting Endorsement** itself.

m.   **Good Samaritan Service(s)** means any actual or alleged act, error or omission arising from an **Insured** acting as a Good Samaritan by voluntarily providing aid that is not a part of the **Insured's** employment when encountering the scene of an emergency requiring sudden action. This also means such incident when it results from the actions of anyone under an **Insured's** direction or control.

n.   **Hazardous Properties** means radioactive, toxic or explosive properties.

o.   **Healthcare Professional Services Wrongful Act** means any actual or alleged act, error or omission, or series of acts, errors or omissions, by an **Insured**, or a person or entity for whom an **Insured** is vicariously liable, in rendering or failing to render:

  a.   **Medical Services**;

  b.   the activities of an **Insured** as a member of a formal accreditation, standards of review or similar professional board or committee of the **Named Insured**, including executing the directives of such board or committee;

  c.   supervising, teaching or proctoring others at the request of the **Named Insured**; or

  d.   reviewing the quality of **Medical Services**.

  e.   **Good Samaritan Services**

p.   **Impaired Property** means tangible property, other than **Products** or **Work**, that cannot be used or is less useful because:

© 2015 CapSpecialty, Inc. All rights reserved.

    a.   it incorporated **Products** or **Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.   an **Insured** has failed to fulfill the terms of a contract or agreement

if such property can be restored to use by:

a.   the repair, replacement, adjustment or removal of **Products** or **Work**; or

b.   an **Insured** fulfilling the terms of the contract or agreement.

q.   **Incident** means a **Healthcare Professional Services Wrongful Act, Employee Benefits Wrongful Act, Sexual Misconduct, Bodily Injury, Property Damage, Advertising Injury, Personal Injury** or **Damages to Premises Rented to You.**

r.   **Loss** means amounts that an **Insured** becomes legally obligated to pay in connection with a **Claim** covered under this Policy. **Loss** includes:

    a.   settlements;

    b.   judgments;

    c.   pre-judgment and post-judgment interest on any settlement or judgment, where required by law; and

    d.   punitive and/or exemplary damages, to the extent that such coverage is permitted by law.

**Loss** does not include:

    a.   **Defense Expenses**

    b.   amounts for which an **Insured** is not legally liable;

    c.   taxes;

    d.   any refund of an **Insured**'s fees, profits or charges;

    e.   fines or penalties;

    f.   the multiplied portion of any multiplied damages award;

    g.   benefits under an **Employee Benefits Program**;

    h.   relief or redress in any form other than monetary compensation or monetary damages, including without limitation the cost of complying with any injunctive, declaratory or administrative relief;

    i.   costs or fees awarded in favor of the claimant; or

    j.   amounts deemed uninsurable under applicable law.

s.   **Medical Payments** means reasonable payments for:

    a.   first aid administered at the time of an accident;

    b.   necessary medical, surgical, x-ray and dental services, including prosthetic devices; or

    c.   necessary ambulance, hospital, professional medical and nursing and funeral services.

t.   **Medical Services** means healthcare, medical care, or treatment provided to any individual, including without limitation any of the following: medical, dental, psychiatric, mental health, chiropractic, osteopathic, nursing, or other professional healthcare; the furnishing or dispensing of medications, drugs,

© 2015 CapSpecialty, Inc. All rights reserved.

blood, blood products, or medical, dental, or psychiatric supplies, equipment, or appliances in connection with such care; the furnishing of food or beverages in connection with such care; the providing of counseling or other social services in connection with such care; and the handling of, or the performance of post-mortem examinations on, human bodies.

u. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

    a. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. vehicles maintained for use solely on or next to premises the **Named Insured** owns or rents;

    c. vehicles that travel on crawler treads;

    d. vehicles, whether self-propelled or not, maintained primarily to provide mobility or permanently mounted:

        1. power cranes, shovels, loaders, diggers or drills; or

        2. road construction or resurfacing equipment such as graders, scrapers or rollers.

v. **Named Insured** means the entity designated as such in Item 1. of the Declarations.

w. **Nuclear Facility** means nuclear reactor, uranium isotopes separations device or equipment, special **Nuclear Material** device or equipment, or **Nuclear Waste** site. **Nuclear Facility** includes the site on which it is located, all operations conducted on such site, and all premises used for such operations.

x. **Nuclear Material** means any of the following materials which are defined in the federal Atomic Energy Act, or any of its amendments:

    a. source materials;

    b. special **Nuclear Material**; or

    c. by-product material.

y. **Nuclear Waste** means any waste material that contains by-product material and results from the operation of any **Nuclear Facility** by any **Insured**. **Nuclear Waste** does not include tailings or wastes that result from the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content.

z. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

aa. **Patient** means any person or human body seeking, registered or admitted to receive **Medical Services** from an **Insured** before, during or after registration for such services, and whether on an in **Patient**, out **Patient** or emergency basis.

bb. **Personal Injury** means injury, other than **Bodily Injury**, arising out of one or more of the following offenses:

    a. false arrest, detention or imprisonment;

    b. malicious prosecution; or

© 2015 CapSpecialty, Inc. All rights reserved.

    c.  the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor.

cc.  **Policy Period** means the period identified in the Declarations of this Policy.

dd.  **Pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

ee.  **Products** means:

    a.  any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        1.  an **Insured**;

        2.  others trading under the name of the **Named Insured**; or

        3.  a person or organization whose business or assets have been acquired by the **Named Insured**; and

    b.  containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Products** includes

    a.  warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Products**; and

    b.  the providing of or failure to provide warnings or instructions.

**Products** does not include vending machines or other property rented to or located for the use of others but not sold.

ff.  **Products Completed Operations Hazard** includes all **Bodily Injury** and **Property Damage** occurring away from premises the **Named Insured** owns or rents and arising out of the **Insured's   Product** or **Work**, except:

    a.  **Products** that are still in the **Insured's** physical possession;

    b.  **Work** that has not yet been completed or abandoned.  However, the **Insured's Work** will be deemed completed at the earliest of the following times:

        i.  When that part of the **Work** done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project;

        ii.  When all of the **Work** called for in  the **Insured's** contract has been completed; or

        iii.  When all of the **Work** to be done at the job site has been completed if an **Insured's** contract calls for **Work** at more than one job site.

**Work** that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

This hazard does not include **Bodily Injury** or **Property Damage** arising out of:

© 2015 CapSpecialty, Inc. All rights reserved.

a. The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by an **Insured**, and that condition was created by the loading or unloading of that vehicle by any **Insured**; or

b. The existence of tools, uninstalled equipment, or abandoned or unused materials;

gg. **Property Damage** means:

a. physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. loss of use of tangible property of others that is not physically injured.  All such loss of use shall be deemed to occur at the time of the **Occurrence** that caused it.

For purposes of this insurance, "electronic data" is not tangible property.

"Electronic data," as used in this definition, means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

hh. **Related Claims** means any and all **Claims** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions, patients or events, or the same or related series of facts, circumstances, situations, transactions, patients or events, whether related logically, causally, or in any other way, in any combination, whether or not involving more than one policy, practice, procedure or product, including any course of treatments, and whether or not deemed a continuous tort.

ii. **Retroactive Date** means the applicable date set forth on the Declarations of this Policy.

jj. **Sexual Misconduct** means any type of actual, alleged, attempted, suggested or proposed physical, sexual or inappropriate contact, speech or activity by an **Insured**, or by any other person for whom an **Insured** may be legally liable.

kk. **Suit** means a civil proceeding in which damages because of an **Incident** to which this insurance applies are alleged. **Suit** includes:

a. an arbitration proceeding in which such damages are claimed and to which an **Insured** must submit or does submit with **Our** consent; and

b. any other alternative dispute resolution proceeding in which such damages are claimed and to which an **Insured** submits with **Our** consent.

ll. **Volunteer** means a person who provides his or her services or labor to the **Named Insured**, and whose activities are supervised and directed by the **Named Insured**, but who does not have a contract to provide and is not compensated for such services and labor.

mm. **We/Us/Our** means the Company providing insurance under this Policy.

mm. **Work** means:

a. work or operations performed by an **Insured**  or on behalf of an **Insured**; and

b. materials, parts or equipment furnished in connection with such work or operations.

**Work** includes:

© 2015 CapSpecialty, Inc. All rights reserved.

a.  warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Work**; and

b.  the providing of or failure to provide warnings or instructions.

## IV.    WHEN COVERAGE DOES NOT APPLY – APPLICABLE TO ALL INSURING AGREEMENTS

**We** will not pay **Loss** or **Defense Expenses** for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

a.  Asbestos

Injury or damage arising in whole or in part, either directly or indirectly, out of asbestos, regardless of whether the asbestos is:

a.  airborne as a fiber or particle;

b.  contained in a **Product**;

c.  carried or transmitted on clothing or by any other means; or

d.  contained in or a part of:

1.  any building;

2.  any building material;

3.  any insulation product; or

4.  any component part of any building, building material or insulation product.

b.  Auto

Injury or damage arising, in whole or in part, out of the ownership, maintenance, use or entrustment to others of any aircraft, **Auto**, **Mobile Equipment**, or watercraft.  Use includes operation and loading and unloading.

However, this exclusion does not apply to the loading or unloading of **Patients**.

© 2015 CapSpecialty, Inc. All rights reserved.

c.   <u>Certain Statutory Obligations</u>

Violation of the Employee Retirement Income Security Act of 1974 (ERISA), the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Reconciliation Act, the Occupational Safety and Health Act, all as may be amended, or any similar federal, state or local statutory or common law, or any rules or regulations promulgated thereunder.

d.   <u>Contractual Liability</u>

Subject to the Blanket Additional Protected Persons provision in Section II, any actual or alleged liability of an **Insured** under any express contract or agreement, unless such liability would have attached in the absence of such contract or agreement.   For purposes of this exclusion, an "express contract or agreement" is an actual agreement by contracting parties, the terms of which are openly stated in distinct or explicit language, either orally or in writing, at the time of its making.

e.   <u>Criminal, Dishonest, Fraudulent, Malicious, Uninsurable Acts</u>

Dishonest, fraudulent, criminal or intentionally malicious act, error or omission by an **Insured**; any willful violation of law, statute, rule or regulation by an **Insured**; or the gaining of any profit, remuneration or advantage by an **Insured** to which an **Insured** is not legally entitled; provided, however, the applicability of this Exclusion IV may only be determined by a testimonial and un-contradicted admission, final adjudication or a finding either in the **Claim**, or in a proceeding separate from or collateral to the **Claim** including any proceeding filed by **Us** or an **Insured** to determine coverage for the **Claim**.

For purposes of this Exclusion IV, no such act of an **Insured** will be imputed to anyone else who was not aware of and did not participate in such act.

f.   <u>Discrimination</u>

Discrimination against any person or entity on any basis, including race, creed, color, religion, sex, sexual orientation, ethnic background, national origin, age, disability, handicap or pregnancy.

g.   <u>Employers' Liability</u>

Injury or damage to:

   a.   an employee of the **Named Insured** arising out of and in the course of:

      1.   employment by the **Named Insured**; or

      2.   performing duties related to the conduct of the **Named Insured**'s business; or

   b.   the spouse, child, parent, or sibling of that employee as a consequence of paragraph (a) above.

h.   <u>Employment Practices</u>

**Employment Practices**.

i.   <u>Expected or Intended Acts</u>

**Bodily Injury**, **Property Damage**, **Personal Injury**, or **Advertising Injury** expected or intended from the standpoint of any **Insured**; except for **Bodily Injury** resulting from use of reasonable force to protect persons or property.

j.   <u>Fungi and Bacteria</u>

© 2015 CapSpecialty, Inc. All rights reserved.

Injury or damage arising in whole or in part, directly or indirectly, out of fungi or bacteria, including mold or mildew, any mycotoxins, toxins, allergens, spores, scents, vapors, gases or by-products released by fungi, regardless of whether such fungi is:

    a.  airborne;

    b.  contained in **Products**; or

    c.  contained in or a part of any building, structure, building material, or any component part of any of the foregoing.

k.  <u>Insured Versus Insured</u>

**Claim** asserted by or on behalf of an **Insured** against another **Insured**; provided however that this exclusion will not apply to preclude or limit coverage for an otherwise covered **Claim** based on or arising out of the **Insured**'s **Administration** of its **Employee Benefits Programs**.

l.  <u>Intellectual Property Infringement</u>

Infringement of any right of patent, service mark, trademark, copyright, title or slogan.

m.  <u>Knowingly False or Repeated Publication</u>

**Personal Injury** or **Advertising Injury** arising out of oral or written publication of material:

    a.  if done by or at the direction of an **Insured** with knowledge of its falsity; or

    b.  whose first publication took place before the Inception Date set forth in the Declarations.

n.  <u>Nuclear Energy Liability</u>

    a.  Injury or damage for which any **Insured** is also protected under a nuclear energy liability insurance policy or would have been protected under such a policy if that policy's limits of insurance had not been exhausted.

    b.  Injury or damage that results from the **Hazardous Properties** of **Nuclear Material** and for which:

        1.  any **Insured** is required by law to maintain financial protection in accordance with the Federal Atomic Energy Act, or any of its amendments; or

        2.  any **Insured** is entitled or would have been entitled had this insurance not been issued, to indemnity from the United States government, or any of its agencies, under any contract or agreement between the government, or any of its agencies, and any **Insured**.

    c.  Injury or damage that results from the **Hazardous Properties** of **Nuclear Material** when:

        1.  The **Nuclear Material** is located at, or at any time discharges or disperses from, a **Nuclear Facility** which is or was at any time owned by any **Insured**, or operated by or for any **Insured**;

        2.  The **Nuclear Material** is contained in spent nuclear fuel or **Nuclear Waste** that is or was at any time possessed, handled, used, processed, stored, transported, or disposed of by any or for any **Insured**; or

© 2015 CapSpecialty, Inc. All rights reserved.

3.   The **Claim** results from the furnishing by any **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation, or use of any **Nuclear Facility**.

d.   This exclusion does not apply to **Claims** for **Healthcare Professional Services Wrongful Act**s.

o.   <u>Pollution</u>

Injury or damage resulting from:

a.   the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time; or

b.   any request, demand or order than any **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

c.   any **Claim** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

p.   <u>Regulatory</u>

Violation of any federal, state or local antitrust, restraint of trade, unfair competition, or price-fixing law, or any rules or regulations promulgated thereunder, including violations of laws, rules or regulations against healthcare fraud, or any involvement in any agreement or conspiracy to restrain trade, except for any otherwise covered **Claim** arising out of the rendering of, or failure to render, **Healthcare Professional Services**.

q.   <u>Retroactive Date/Prior Notice/Prior Knowledge</u>

**Incident** that happened before the **Retroactive Date** if applicable, or after the **Retroactive Date** if, on the Inception Date of this Policy, the **Insured** knew, had been told, should have known or had notified a prior insurer or administrator of any other risk transfer instrument that such **Incident** may result in a **Claim**.

r.   <u>War</u>

Injury or damage that results directly or indirectly from, contributed to by, resulting from or arising out of or in connection with:

a.   war, including undeclared civil war;

b.   warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c.   insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

s.   <u>Workers' Compensation</u>

© 2015 CapSpecialty, Inc. All rights reserved.

Obligation for which an **Insured** may be liable under workers' compensation, unemployment compensation, disability benefits or any similar law.

## V. THE INSURED'S RIGHTS AND OBLIGATIONS UNDER THIS POLICY

1. Act on Behalf of Others

   The **Named Insured** has the right to act on behalf of anyone who may be entitled to coverage under this Policy with respect to any actions required under this Policy.

2. Assistance, Cooperation, Notice, and Reporting

   a. The **Insured** must cooperate with **Us** and assist **Us** in connection with any **Claim**. This means that the **Insured** must provide **Us** with any requested information and keep **Us** informed of developments; attend hearings, depositions, meetings and trials and assist **Us** in securing and providing evidence and obtaining the attendance of witnesses; provide **Us** with any necessary authorizations to obtain records or any other information; and assist **Us** in making any settlements or enforcing any rights the **Insured** may have against others. Please note that the alteration of any of the **Insured's** records or intentionally misrepresenting or concealing any material fact will be a violation of the **Insured's** duty to cooperate with **Us** and will void any coverage available under this Policy.

   b. If, during the **Policy Period** or any Extended Reporting Period, any **Claim** for an **Incident** is first made against any **Insured**, as a condition precedent to its right to any coverage under this Policy, the **Insured** shall give **Us** written notice of such **Claim** as soon as practicable thereafter, but in no event later than:

      i. sixty (60) days after the Expiration Date or earlier cancellation date of this Policy; or

      ii. the expiration of any Extended Reporting Period.

   Timely and sufficient notice by one **Insured** of a **Claim** shall be deemed timely and sufficient notice for all **Insureds** involved in the **Claim**.

   c. If during the **Policy Period** the **Insured** first becomes aware of any **Incident** that may subsequently give rise to a **Claim** and:

      i. gives **Us** written notice of such **Incident** with full particulars as soon as practicable thereafter but in any event before the Expiration Date or earlier cancellation date of this Policy; and

      ii. requests coverage under this Policy for any **Claim** subsequently arising from such **Incident**;

   then any **Claim** not otherwise excluded by this Policy subsequently made against the **Insured** arising out of such **Incident** shall be treated as if it has been first made during the **Policy Period**. Full particulars of the **Claim** shall include, but not be limited to, a description of the **Incident**; the identity of the **Patient**; all potential claimants and the healthcare provider(s) and any **Insureds** involved; information on the time, place and nature of the **Incident**; the manner in which the **Insured** first became aware of such **Claim**; and the reasons the **Insured** believes the **Incident** is likely to result in a **Claim**.

   d. In providing the notice required by this Policy, an **Insured** must provide **Us** with a complete description of the relevant events, copies of any reports or investigations, names and addresses of any witnesses, copies of any relevant records; copies of any relevant correspondence, court or administrative documents; and any other papers and relevant information. Such notice shall give particulars of the **Claim**, including, but not limited to, a description of the **Claim** and the **Incident**, including the time, place and nature of the **Incident**;

© 2015 CapSpecialty, Inc. All rights reserved.

and the identity of the **Patient**, all potential claimants and the healthcare provider(s) and any **Insureds** involved.  Notice must be provided in writing to:

Claim Department
Professional Risk Management Services, Inc.
1401 Wilson Blvd., Suite 700
Arlington, VA 22209-2402
Email: PCClaims@CapSpecialty.com

e.  Notwithstanding anything to the contrary contained in this Policy, if this Policy is a renewal of one or more policies previously issued by **Us** to the **Named Insured**, and the coverage provided by **Us** to the **Named Insured** was in effect, without interruption, for the entire time between the inception date of the first such other Policy and the inception date of this Policy, the reference in clause 2.c. above to the **Policy Period** will be deemed to refer to the period from (i) the inception date of the first policy under which **We** began to provide the **Named Insured** with the continuous and uninterrupted coverage of which this Policy is a renewal, to (ii) the Expiration Date set forth in the Declarations.

3. <u>Cancellation</u>

The **Named Insured** has the right to cancel this Policy and obtain a refund of premium by providing **Us** with written notice prior to the requested cancellation date.  Any premium to be refunded will be computed according to the customary short rate table and procedure, which may result in less than a pro-rata refund.

4. <u>Consent</u>

The **Named Insured** has the right to consent to, or to withhold consent from, any settlement (other than a settlement of a **Claim** involving **Sexual Misconduct**).

Without **Our** written consent, an **Insured** cannot admit or assume any liability, assume any financial obligation, pay any money or fine, make any offer to settle or settle a **Claim**, or incur any expense.

5. <u>Right to Purchase Extended Reporting and Automatic 30 Day Extended Reporting Period</u>

If **We** or the **Named Insured** cancels or non-renews this Policy (unless **We** cancelled the Policy as a result of the **Insured**'s failure to pay the premium due), the **Named Insured** has the right to purchase an **Extended Reporting Endorsement** upon payment of an additional premium.  To exercise this right **We** must be informed, in writing, of the **Named Insured**'s desire to do so and the **Named Insured** must pay the additional premium within thirty (30) days of the termination of the Policy.  Once paid, any such premium is fully-earned, non-refundable and the **Extended Reporting Endorsement** cannot be cancelled.   Any coverage provided pursuant to an **Extended Reporting Endorsement** shall be part of, and not in addition to, the limits of liability of this Policy.

If **We** or the **Named Insured** cancels or non-renews this Policy (unless **We** cancelled the Policy as a result of the **Named Insured**'s failure to pay the premium due), the **Named Insured** shall have the right to a period of thirty (30) days following the effective date of such cancellation or non-renewal in which to give notice to **Us** of **Claims** first made against an **Insured** during the said thirty (30) day period for any **Incident** committed prior to the effective date of such cancellation or non-renewal and otherwise covered by this Policy.

© 2015 CapSpecialty, Inc. All rights reserved.

## VI.    OUR RIGHTS AND OBLIGATIONS

1. Cancellation

   **We** may cancel this Policy for non-payment of premium, so long as **We** send the **Named Insured** written notice of **Our** intent to do so within the time mandated by applicable state law or, if no applicable state law exists, at least ninety (90) days prior to the date of the cancellation.  Any premium to be refunded as a result of such cancellation will be calculated on a pro-rata basis or other basis mandated by state law.

2. Defense Obligation

   **We** have the obligation to provide the **Insured** with a legal defense to any covered **Claim**.  This means that **We** will retain an attorney to represent the **Insured** and, subject to the applicable limits of coverage, will pay all **Defense Expenses** that are incurred in the **Insured**'s defense.  Our obligation to provide the **Insured** with a defense will end after **We** have paid the applicable limits of coverage reflected in the Declarations of this Policy.  Unless specified in the applicable Insuring Agreement, the payment of **Defense Expenses** will not reduce or exhaust the applicable limits of coverage.

3. Non-Renewal

   **We** may elect to non-renew this Policy for any reason.  In the event that **We** do so,

   **We** will inform the **Named Insured** of that decision in writing within the time mandated by applicable state law or, if no applicable state law exists, at least ninety (90) days prior to the effective date of the non-renewal.  In such event, the **Named Insured**'s rights to purchase an **Extended Reporting Endorsement** are set forth in Section V.5. above.

4. Right to Settle Sexual Misconduct Claim

   **We** have the right to settle any **Claim** involving **Sexual Misconduct** without seeking the consent of any **Insured**.

5. Voiding the Policy

   **We** may declare this Policy void from inception (as though it never existed) for reasons of fraud or material misrepresentation in the **Application** for coverage or the presentation of a **Claim** for coverage.  In that event, **We** will inform the **Named Insured** in writing and refund the premium paid for this Policy.

## VII.    OTHER CONDITIONS AND PROVISIONS

1. Assignment

   No assignment of interest under this Policy shall bind **Us** without **Our** written consent issued as an endorsement to form a part of this Policy.

2. Change By Endorsement

   This Policy can be changed only by a written endorsement signed and issued by **Us** and made a part of this Policy.

© 2015 CapSpecialty, Inc. All rights reserved.

3.  Entire Agreement

    The **Insureds** agree that this Policy, including the **Application** and any endorsements, constitutes the entire agreement between them and **Us** or any of **Our** agents relating to this insurance.

4.  Headings

    The descriptions in the headings and sub-headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

5.  No Action

    No person or entity may sue **Us** to recover under this Policy unless the **Insureds** have first fully complied with all of the terms of this Policy, and until the amount of the **Insureds'** obligation to pay has been finally determined either by a judgment against the **Insured** or by a written settlement agreement executed by the **Insured**, **Us** and the claimant.  No person or entity may join or implead **Us** as a party to any action against an **Insured**.

6.  Other Insurance

    If any **Loss** or **Defense Expenses** resulting from any **Claim** or **Occurrence** is insured under any other insurance policy, this policy will apply in excess of the other insurance.  This Policy will not be subject to the terms of any other policy.  However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

7.  Related Claims

    All **Related Claims**, whenever made, shall be deemed to be a single **Claim**, regardless of:

    a.  the number of **Related Claims**;

    b.  the number or identity of claimants;

    c.  the number of identity of **Insureds** involved or against whom **Related Claims** have been or could be made; and

    d.  whether the **Related Claims** are asserted in a class action or otherwise;

    e.  the number and timing of the **Related Claims**.

    All **Related Claims** will be treated as a single **Claim** made when the earliest of such **Related Claims** was first made.

8.  Representation; Incorporation of Application

    The **Insureds** represent that the particulars and statements contained in the **Application** attached to this Policy are true, accurate and complete and agree that:

    a.  this Policy is issued and continued in force by **Us** in reliance upon the truth of such representation;

    b.  those particulars and statements are the basis of this Policy; and

    c.  the **Application** and those particulars and statements are incorporated in and form a part of this Policy.

    No knowledge or information possessed by any **Insured** shall be imputed to any other **Insured**, except for material facts or information known to the person or persons who signed the **Application**.  In the event of any material untruth, misrepresentation or omission in connection with any of the particulars or statements in the **Application**, this Policy shall be void with respect to any **Insured** who knew of such untruth, misrepresentation or omission or to whom such knowledge is imputed.

© 2015 CapSpecialty, Inc. All rights reserved.

9.  Subrogation

In the event of any payment hereunder, **We** shall be subrogated to the extent of any payment to all of the rights and recovery of the **Insured**.  The **Insured** shall execute all papers and do everything necessary to secure such rights, including the execution of any documents necessary to enable **Us** effectively to bring **Suit** in its name.  The **Insured** shall do nothing that may prejudice **Our** position or potential or actual rights of recovery.  The obligations of the **Insured** under this condition shall survive the expiration or termination of the Policy.

10.  Territory

This Policy applies to **Incidents** and **Occurrences** taking place anywhere in the world.  **Claim** or **Suit** must be made against an **Insured**, however, in the United States of America, including its territories or possessions, Puerto Rico, or Canada.  Payment of **Loss** under this Policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

© 2015 CapSpecialty, Inc. All rights reserved.

| Endorsement No.: | 1 |
|---|---|
| Endorsement Effective Date: | 05/20/2018 |
| | 12:01 a.m. standard time at the address of the **Named Insured** as shown in Item 1 of the Declarations. |
| Forms a part of Policy No.: | MM20172316-02 |
| Issued to: | Superior Medical Response Inc. |
| Issuing Company: | Capitol Specialty Insurance Corporation |

# Service of Suit

This endorsement modifies insurance provided under the following:
Miscellaneous Medical Professional Liability Policy

It is hereby understood and agreed that:

Capitol Specialty Insurance Corporation ("CSIC") may be sued upon any cause of action arising under any insurance contract made by CSIC or evidence of insurance issued or delivered by the producer, in the courts for the county(s) where the insurance provides coverage or in the courts of Dane County, Wisconsin, where the insurer maintains its home office.

It is further agreed that service of process in such suit may be made upon the appropriate person at the state Department of Insurance, Secretary of State or other designee as provided for in specific state laws and/or regulations.

When service of process is made upon a statutory designee according to state law, such process should be provided via mail to:

Vice President – Claims
Capitol Specialty Insurance Corporation
1600 Aspen Commons
Middleton, Wisconsin  53562-4718

The above-named is authorized and directed to accept service of process on our behalf in any suit.  It is further agreed that in any suit instituted against any insured under this policy or otherwise upon this policy, we will abide by the final decision of such court or of any appellate court in the event of an appeal.

If this endorsement is issued after the Policy has been issued, it is deemed to have been added to the list of forms and endorsements on the Declarations.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

© 2017 CapSpecialty, Inc. All rights reserved.
Includes material copyrighted by Insurance Services Office, Inc., used with permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

HEALTHCARE ORGANIZATIONS CLAIMS – MADE GENERAL LIABILITY INSURING AGREEMENT
HEALTHCARE ORGANIZATIONS OCCURRENCE GENERAL LIABILITY INSURING AGREEMENT
HEALTHCARE ORGANIZATIONS CLAIMS-MADE SEXUAL MISCONDUCT INSURING AGREEMENT
HEALTHCARE ORGANIZATIONS OCCURRENCE SEXUAL MISCONDUCT INSURING AGREEMENT
HEALTHCARE ORGANIZATIONS OCCURRENCE EMPLOYEE BENEFITS LIABILITY INSURING AGREEMENT

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

**Any Injury or Damage** arising, directly or indirectly, out of a **Certified Act of Terrorism**.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, **Any Injury** or **Damage** means any injury or damage covered under any Insuring Agreement to which this endorsement is applicable, and includes but is not limited to **Bodily Injury, Property Damage, Advertising Injury,** or **Personal Injury,** as may be defined in any applicable Insuring Agreement.

**2.** **Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Insuring Agreement.

© 2015 CapSpecialty, Inc.
Contains Copyrighted Material of Insurance Services Offices, Inc. used with permission

| Endorsement No.: | 2 |
|---|---|
| Endorsement Effective Date: | 05/20/2018<br>12:01 a.m. standard time at the address of the **Named Insured** as shown in Item 1 of the Declarations. |
| Forms a part of Policy No.: | MM20172316-02 |
| Issued to: | Superior Medical Response Inc. |
| Issuing Company: | Capitol Specialty Insurance Corporation |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# Media Expenses Supplementary Payments Coverage

This endorsement modifies insurance provided under the following:
Healthcare Organizations Common Policy Conditions

In consideration of the premium charged, it is understood and agreed that the following is added to Section I. Defense and Supplementary Payments in the Common Policy Conditions of said policy.

**We** will reimburse the **Insured** for the **Legal or Public Relation Expenses** actually incurred due to a **Triggering Event**, which first takes place during the **Policy Period** and which is reported under the duties section below.

**We** will pay up to $25,000 in **Media Expenses** for each **Incident** and a maximum of $75,000 in **Media Expenses** for any and all **Incidents** during the **Policy Period**.

Furthermore, it is agreed that the following Definitions are added to said policy solely as respects to this endorsement:

**Legal or Public Relations Expenses** are the reasonable fees and costs incurred in the management of public relations with respect to a **Triggering Event**. Included in these expenses are fees and costs due to attorneys, experts and consultants, including third-party media consultants, incurred in the investigation and defense of an actual or alleged **Triggering Event**. Upon satisfactory proof of payment by the **Named Insured**, **We** will reimburse the **Named Insured** up to the amount set forth in this policy for media expense actually paid by the **Named Insured** during the **Policy Period** in connection with a **Triggering Event**, provided that **We** will have no liability whatsoever for fines, penalties, assessments of costs or other financial awards associated with any such **Triggering Event.**

**Triggering Event** means any criminal investigation, criminal complaint, indictment, or administrative, regulatory, disciplinary, or licensure proceeding arising out of a **Healthcare Professional Services Wrongful Act** that happened on or after the retroactive date.

**Insured's** Duties in regards to reporting under this endorsement are as follows:

1. Any **Triggering event** shall be reported to **Us** as soon as practicable, but in no event later than thirty (30) days after the **Insured** has first incurred any **Legal or Public Relations Expenses** for which coverage will be requested, or thirty (30) days after the expiration date of this policy, or whichever is earlier.  The **Insured** is not required to obtain prior written approval or consent from **Us** before incurring any **Legal or Public Relations Expenses.**

If this endorsement is issued after the Policy has been issued, it is deemed to have been added to the list of forms and endorsements on the Declarations.

All other terms and conditions of this Policy remain unchanged.

 © 2015 CapSpecialty, Inc. All rights reserved.

| Endorsement No.: | 3 |
|---|---|
| Endorsement Effective Date: | 05/20/2018 |
| | 12:01 a.m. standard time at the address of the **Named Insured** as shown in Item 1 of the Declarations. |
| Forms a part of Policy No.: | MM20172316-02 |
| Issued to: | Superior Medical Response Inc. |
| Issuing Company: | Capitol Specialty Insurance Corporation |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## HIPAA Violation Supplementary Payments Endorsement

This endorsement modifies insurance provided under the following:
> Healthcare Organizations Common Policy Conditions

In consideration of the premium charged, it is understood and agreed that the following is added to Section I. Defense and Supplementary Payments in the Common Policy Conditions of said policy.

**We** will reimburse the **Insured** for **HIPAA Expenses** actually incurred due to a **HIPAA Violation**, which first takes place during the **Policy Period** and which is reported under the duties section below.

**We** will pay up to $25,000 in **HIPAA Expenses** for each **Incident** and a maximum of $75,000 in **HIPAA Expenses** for any and all **Incidents** during the policy period arising out of a **HIPAA Violation**.

Furthermore, it is agreed that the following Definitions are added to said policy solely as respects to this endorsement:

**HIPAA Violation** means any proceeding brought by a government entity (other than proceedings in the ordinary course of the **Named Insured's** business) alleging a violation of the privacy provisions of the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

**HIPAA Expense** means reasonable fees and costs incurred in the investigation, mitigation and/or defense of an actual or alleged **HIPAA Event**. Included in these expenses are fees and costs (a) incurred due to attorneys, experts and consultants, including third-party media consultants; (b) incurred to notify third parties directly affected by such public relations events; (c) associated with credit monitoring services; and (d) incurred in the management of public relations with respect to such Public Relations.

**HIPAA Event** means:

1. Any HIPAA violation, or any other failure to maintain the confidentiality of information regarding **Medical Services** or information obtained in the provision of providing **Medical Services**, or unauthorized release or use of such information.

**Insured's** Duties in regards to reporting under this endorsement are as follows:

1. Any **HIPAA violation** shall be reported to **Us** as soon as practicable, but in no event later than thirty (30) days after the **Insured** has first incurred any **HIPAA Expense** for which coverage will be requested, or thirty (30) days after the expiration date of this policy, or whichever is earlier. The **Insured** is not required to obtain prior written approval or consent from **Us** before incurring any **HIPAA Expenses.**

If this endorsement is issued after the Policy has been issued, it is deemed to have been added to the list of forms and endorsements on the Declarations.

All other terms and conditions of this Policy remain unchanged.

| Endorsement No.: | 4 |
|---|---|
| Endorsement Effective Date: | 05/20/2018<br>12:01 a.m. standard time at the address of the **Named Insured** as shown in Item 1 of the Declarations. |
| Forms a part of Policy No.: | MM20172316-02 |
| Issued to: | Superior Medical Response Inc. |
| Issuing Company: | Capitol Specialty Insurance Corporation |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Amend Definition of Claim – Clarify Reporting of Incidents

This endorsement modifies insurance provided under the following:
    Healthcare Organizations Common Policy Conditions

In consideration of the premium charged, it is understood and agreed that:

Section III. DEFINED TERMS, Subsection f. Claim, of the HEALTHCARE ORGANIZATIONS COMMON POLICY CONDITIONS is deleted in its entirety and replaced with the following:

   f.   **Claim** means a written demand or **Suit** seeking monetary damages. **Claim** does not include a request for medical records, a Patient Incident report, a variance report, or any other report made for loss prevention purposes, a subpoena for documents, an investigation brought solely by or on behalf of any governmental agency, or a demand or action seeking solely non-monetary or injunctive relief.

By way of clarification, the **Insured** may report known **Incidents** pursuant to Section V. THE INSURED'S RIGHTS AND OBLIGATIONS UNDER THIS POLICY, Subsection 2.c. of the HEALTHCARE ORGANIZATIONS COMMON POLICY CONDITIONS.

If this endorsement is issued after the Policy has been issued, it is deemed to have been added to the list of forms and endorsements on the Declarations.

All other terms and conditions of this Policy remain unchanged.

| Endorsement No.: | 5 |
| Endorsement Effective Date: | 05/20/2018 |
| | 12:01 a.m. standard time at the address of the **Named Insured** as shown in Item 1 of the Declarations. |
| Forms a part of Policy No.: | MM20172316-02 |
| Issued to: | Superior Medical Response Inc. |
| Issuing Company: | Capitol Specialty Insurance Corporation |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# Cancellation By Insurer

This endorsement modifies insurance provided under the following:
Healthcare Organizations Common Policy Conditions

In consideration of the  premium charged, it is understood and agreed that Section VI., Subsection 1. governing Cancellation by the Insurer, is deleted in its entirety and replaced with the following:

1. <u>Cancellation</u>

   This policy may be canceled by **Us** for any reason by mailing to the **Named Insured**, at the last known address of the **Named Insured** on file with **Us**, written notice stating when, not less than ninety (90) days thereafter, such cancellation shall be effective.  However, if **We** cancel this policy because the **Named Insured** has failed to pay a premium when due, this policy may be canceled by **Us** by mailing to the **Named Insured**, at the last known address of the **Named Insured** on file with **Us**, written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective.

   Proof of mailing shall be sufficient proof of notice.

   In the event of cancellation by **Us**, unearned premium shall be computed on a pro rata basis. Premium adjustment may be made either at the time cancellation is effective, or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

   To the extent this Section conflicts with any applicable state law relating to cancellation of insurance, the terms of this Section shall be deemed amended so as to conform to such law.

If this endorsement is issued after the Policy has been issued, it is deemed to have been added to the list of forms and endorsements on the Declarations.

All other terms and conditions of this Policy remain unchanged.